**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| AGIM BAJRAKTARI, Plaintiff, | : | |
| v. | : | 3:25-CV-1341 (SFR) |
| HUSQVARNA CONSUMER OUTDOOR PRODUCTS N.A., INC., *ET AL.*, Defendants. | : | |

**MEMORANDUM & ORDER**

In this products liability action, Plaintiff Agim Bajraktari moves to remand to Connecticut Superior Court for lack of subject-matter jurisdiction. Defendants contend that diversity jurisdiction exists because, although Bajraktari and Defendant David Brautigam are both citizens of Connecticut, Brautigam is improperly joined in the action. But I am not persuaded that Defendants have met the demanding burden of proving fraudulent joinder. Accordingly, for the reasons explained below, Bajraktari's motion to remand, ECF No. 14, is GRANTED.

## I. BACKGROUND

On August 31, 2023, Bajraktari was injured while mowing his lawn. Compl. ¶ 9, ECF No. 1-1. Bajraktari purchased the lawnmower from David Brautigam. *Id.* ¶ 3. The lawnmower was designed, manufactured, and marketed by Husqvarna Consumer Outdoor Products N.A., Inc. and Husqvarna Professional Products, Inc. ("Husqvarna"). *Id.* ¶¶ 2, 4. The Complaint alleges that Husqvarna "was and still is engaged in the business of designing, manufacturing, marketing and selling various products including the subject walk behind power mower." *Id.*

¶ 4. The Complaint also states: "The Defendants, at all material times, has [*sic*] been engaged in the business of selling products as the product sold to the Plaintiff." *Id.* ¶ 41. According to the Complaint, Bajraktari was injured because of a defect in the lawnmower that caused the lawnmower to continue running even after the operator presence control bar was released. *Id.* ¶¶ 9-11. As a result of this defect, the lawnmower rolled into the back of Bajraktari's foot, causing serious injuries. *Id.* ¶ 13.

Bajraktari initiated the action by bringing suit in Connecticut Superior Court. The Complaint asserts a single claim under the Connecticut Product Liability Act ("CPLA") against Husqvarna Consumer Outdoor Products N.A., Inc., Husqvarna Professional Products, Inc., and David Brautigam. *Id.* at 1.[1] Defendants removed to this court. ECF No. 1. Bajraktari moved to remand. ECF No. 14; ECF No. 14-1 ("Pl.'s Mem."). Defendants responded in opposition. ECF No. 20 ("Defs.' Mem."). And Bajraktari replied in support of his motion. ECF No. 21 ("Pl.'s Reply"). I heard argument on the motion to remand on February 26, 2026. ECF No. 30. In the time since briefing closed, the parties have filed several notices of supplemental authority. ECF Nos. 28, 29, & 31.

## II. <u>LEGAL STANDARD</u>

"A plaintiff may not defeat federal court diversity jurisdiction by improperly joining as a defendant a non-diverse party with no real connection to the controversy." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010). Under the doctrine of fraudulent joinder, "courts overlook the presence of a non-diverse defendant if from the

---

[1] I cite throughout to the pagination generated by ECF rather than to any page numbers appearing within the parties' submissions.

pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Briarpatch Ltd., L.P, v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004). "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). "The defendant seeking removal bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.*

## III. DISCUSSION

The parties agree there is complete diversity of citizenship between Bajraktari and the two Husqvarna corporate entities named in the Complaint. Moreover, Bajraktari does not dispute Defendants' contention that, based on the nature of his injuries, the amount in controversy exceeds $75,000. ECF No. 1, at 7-8 (observing that the Complaint alleges Bajraktari experienced "painful, permanent, severe traumatic and disabling injuries," including "lacerations to his lower left extremity including traumatic amputation of a portion of his left heel"). The dispositive issue thus becomes whether Brautigam is properly joined as a defendant.[2] Moreover, there is no suggestion that Bajraktari engaged in "outright fraud" by naming a defendant with no real connection to the controversy: it is undisputed that Brautigam

[2] Brautigam is both a non-diverse defendant and a resident of the forum state. Thus, if Defendants demonstrate that Brautigam was improperly joined, the doctrine of fraudulent joinder would also permit me to overlook the forum defendant rule set forth in 28 U.S.C. § 1441(b)(2). *See McMahon v. Harbor Freight Tools USA Inc.*, No. 3:26-CV-00825 (KAD), 2026 WL 2241414, at *1 n.1 (D. Conn. Aug. 4, 2026).

sold Bajraktari the lawnmower that is the subject of the CPLA claim. Compl. ¶ 3. Instead, Defendants contend that there is "no possibility" that Bajraktari can state a claim against Brautigam in Connecticut state court. *Briarpatch*, 373 F.3d at 302.

My focus in conducting the fraudulent joinder inquiry is not to probe the ultimate merits of the CPLA claim against Brautigam. *Castillo v. BJ's Wholesale Club*, 645 F. Supp. 3d 85, 94-95 (E.D.N.Y. 2022) ("The district court's role in assessing fraudulent joinder is not to assess the *strength* of plaintiff's claims, but rather to assess whether plaintiff *could* assert such a claim against the non-diverse defendants in state court."). Rather, the goal is to "identify cases in which it is objectively reasonable for the court to conclude that the plaintiff has improperly sued a non-diverse defendant in order to deprive the other defendants of their right to a federal forum under the removal statute." *Soto v. Bushmaster Firearms Int'l, LLC*, 139 F. Supp. 3d 560, 562 (D. Conn. 2015) (citing *Pampillonia*, 138 F.3d at 461). "If the plaintiff's claim is not precluded as a matter of law—if there is any possibility the plaintiff can state a claim against the non-diverse defendant—an inference that the plaintiff is guilty of improper conduct is unwarranted, and adjudicating the case in federal court would violate the plaintiff's right to choose the forum for the litigation." *Id.* at 563. As the Court explained in *Soto*, the fraudulent joinder analysis is similar to the standard established by Rule 11 for litigation abuse, which "seeks to deter frivolous litigation without chilling creative advocacy." *Id.*; *see also Tranquillo v. Gen. Elec. Co.*, No. 3:25-CV-1339 (SVN), 2026 WL 622609, at *5 (D. Conn. Mar. 5, 2026) (applying *Soto*); *Fradianni v. Protective Life Ins. Co.*, No. 3:09-CV-1421 (JCH), 2010 WL 11661410, at *3 (D. Conn. Jan. 28, 2010) (agreeing that the "objectively frivolous" standard set by Rule 11 is an appropriate analogue to the fraudulent joinder standard). I agree with the Court's reasoning in *Soto* that the Rule 11 standard is an appropriate rubric for

analyzing whether the plaintiff engaged in litigation misconduct by joining a defendant with no real connection to the controversy or instead pursued a litigation strategy that, even if ultimately unsuccessful on the merits, nonetheless falls within the boundaries of permissible advocacy.

I therefore analyze whether it is objectively frivolous for Bajraktari to assert a claim under the CPLA against Brautigam.[3] Under Connecticut law, "only product sellers may be named as defendants in a product liability claim." *Health Body World Supply, Inc. v. Wang*, 353 Conn. 296, 321 (2025). The CPLA defines "product seller" as one who "is engaged in the business of selling such products whether the sale is for resale or for use or consumption." Conn. Gen. Stat. § 52-572m(a). The Connecticut Supreme Court has observed that a plaintiff must establish that "the defendant was engaged in the business of selling the product." *White v. Mazda Motor of Am., Inc.*, 313 Conn. 610, 622 (2014). The Complaint alleges that Brautigam sold the lawnmower to Bajraktari, and that Defendants (including Brautigam) at all material times, have "been engaged in the business of selling products such as the product sold to the Plaintiff." Compl. ¶ 41.

As a general matter, Defendants do not dispute that an individual accused of selling a defective product can be held liable as a product seller under the CPLA. *See* Defs.' Mem. 10-12. Rather, Defendants object that the Complaint is factually mistaken in describing Brautigam

---

[3] As I have noted, the Complaint asserts a single claim under the CPLA against all Defendants, including Brautigam. Although Bajraktari contends that his claim against Brautigam is not objectively frivolous, Bajraktari argues in the alternative that he might also be able to state a Connecticut common law claim against Brautigam. Pl.'s Mem. 10. Defendants respond that any such claim would be time-barred. Defs.' Mem. 12-13. I need not resolve whether any other claim would be barred by the statute of limitations because I conclude that Defendants have not carried their burden of establishing that the CPLA claim pleaded in the Complaint is objectively frivolous.

as anything more than a casual seller of a lawnmower. *Id.* at 10. Defendants rely on an affidavit from Brautigam, which avers that Bajraktari visited his home in 2020 to purchase several household items Brautigam had posted for sale on Facebook Marketplace. Brautigam Aff. ¶ 3, ECF No. 20-1. Brautigam eventually agreed to sell Bajraktari the lawnmower. *Id.* Brautigam says that this sale represents "the only time I have ever sold a lawn mower." *Id.* ¶ 4. Brautigam also says that he has "never been engage in the business of selling lawn mowers or any other type of outdoor equipment." *Id.* ¶ 5. Bajraktari does not dispute the averments within Brautigam's affidavit. *See* Pl.'s Reply.

I am not persuaded that Defendants have carried their burden of proving by clear and convincing evidence that there is no possibility of recovery against Brautigam. Although the allegations in the Complaint are thin, the Complaint provides clear notice that Bajraktari asserts that Brautigam is a product seller and that he seeks to hold Brautigam liable for selling him a defective product. Compl. ¶¶ 4, 41. Such a claim is not clearly precluded as a matter of Connecticut law. *See Soto*, 139 F. Supp. 3d at 563. Courts routinely decline to find fraudulent joinder where, as here, the complaint alleges facts that, if proven, stand a chance of stating a claim under state law. *Cantafi v. Graybeal*, No. 3:23-CV-01245 (KAD), 2024 WL 3271931, at *4 (D. Conn. July 2, 2024) (declining to find fraudulent joinder where complaint "alleged that each of the [non-diverse defendants] had a specific role in the negligent policies and practices" giving rise to liability); *Sweeting v. Dollar Tree Stores, Inc.*, No. 3:22-CV-472 (OAW), 2023 WL 4043918, at *5 (D. Conn. June 16, 2023); *cf. Tranquillo*, 2026 WL 622609, at *9 (concluding defendant was fraudulently joined because the complaint failed to "allege how [the non-diverse defendant] is at all involved in allegedly causing Mrs. Tranquillo's injuries specifically").

I recognize that Defendants dispute whether Brautigam is a "product seller" of lawnmowers. As noted, Defendants support this argument with a sworn affidavit from Brautigam stating Brautigam has sold only one lawnmower in his life, Brautigam Aff. ¶ 4, which Bajraktari does not contest, *see* Pl.'s Reply. Moreover, as Bajraktari properly acknowledges, *see* Pl.'s Reply 1, courts have resolved to "look beyond the face of the complaint in assessing whether there is any possibility of recovery." *Ret. Program for Emps. of the Town of Fairfield v. NEPC, LLC*, 642 F. Supp. 2d 92, 95 (D. Conn. 2009). But as I explain, I do not find it appropriate at this juncture to choose between the competing factual accounts offered by the Complaint and Brautigam's affidavit.

Although courts can and do look beyond the pleadings on a motion to dismiss for lack of subject-matter jurisdiction, on a jurisdictional inquiry, courts are still bound to accept as true the facts pleaded in the complaint. *See, e.g.*, *Blecher v. Holy See*, 146 F.4th 206, 216 (2d Cir. 2025) ("When considering a motion to dismiss for lack of subject matter jurisdiction, we must accept as true all material factual allegations in the complaint, but we may not draw any jurisdictional inferences in favor of the plaintiff.") (citation modified). Where courts have construed affidavits as part of a fraudulent joinder analysis, they have usually done so because the complaint was silent as to certain facts, not to contradict facts appearing within the complaint that go to liability.

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998), one of the Second Circuit's leading cases on fraudulent joinder, is instructive. There, the court construed affidavits submitted by the plaintiff and defendants in reviewing whether a non-diverse defendant was properly dismissed from a case for fraudulent joinder. *Id.* at 461-62. But the

*Pampillonia* court resorted to materials outside the pleadings only after noting that the underlying complaint was devoid of any facts as to the non-diverse defendant beyond those that would establish its citizenship. *See id.* at 461. And in announcing the standard that remains binding in this Circuit, the *Pampillonia* court insisted that a defendant must "demonstrate, by clear and convincing evidence, . . . that there is no possibility, *based on the pleadings*, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* at 461 (emphasis added). By grounding its standard "in the pleadings," I do not read *Pampillonia* to authorize a defendant to prove that a plaintiff's chances of recovery are precluded by submitting evidence that disputes the facts pleaded in the complaint.

Other courts in this Circuit have declined to credit affidavits submitted by defendants that contradict allegations within the complaint, concluding that such disputed issues of fact were properly resolved on the merits in state court rather than as part of the more limited jurisdictional inquiry conducted on a motion to remand. *See McMahon v. Harbor Freight Tools USA Inc.*, No. 3:26-CV-00825 (KAD), 2026 WL 2241414, at *4 (D. Conn. Aug. 4, 2026) (rejecting evidentiary submissions disputing whether non-diverse defendant could be held individually liable because "such assertions simply contradict the Plaintiff's allegations and generally go to the merits of the Plaintiff's claims, not their viability"); *Castillo*, 645 F. Supp. 3d at 93 (concluding that affidavit and other evidentiary submission from defendant presented "a factual question, one that would require this court to adjudicate the merits of the underlying suit," which would be "inappropriate at the pleadings stage"); *MBIA*, 706 F. Supp. 2d at 395 (cautioning that it was appropriate to consider materials outside the pleadings "so long as those factual assertions are not inconsistent with the allegations of the complaint") (citation modified).

To be sure, some courts have done otherwise. *See, e.g.*, *In re Consol. Fen-Phen Cases*, No. 03 CV 3081 (JG), 2003 WL 22682440, at *4 (E.D.N.Y. Nov. 12, 2003). However, in the circumstances of this case, where Defendants have submitted an affidavit contradicting factual assertions in the Complaint that go to the merits rather than to jurisdictional facts (such as the citizenship of the parties or the amount in controversy), I decline to resolve those disputed facts on the merits. *See Pampillonia*, 138 F.3d at 461 (reiterating that "all factual and legal issues must be resolved in favor of the plaintiff").

Moreover, even if I were to consider the facts set forth in Defendants' affidavit, whether Bajraktari can state a claim against Brautigam in state court would appear to be subject to at least some debate. Although it is undisputed that Bajraktari must establish that Brautigam "engaged in the business of selling" lawnmowers, *see White*, 313 Conn. at 622, Defendants have not identified any controlling authority that would require a plaintiff to establish that the defendant habitually sold lawnmowers or other outdoor equipment in order to recover from the seller because of a defective lawnmower. *Compare Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 272, 278 (D. Conn. 2004) (discussing the paucity of authority in Connecticut on the definition of "product seller" under the CPLA), *with Baxendale v. Stew Leonard's Danbury, LLC*, No. UWY-CV-24-6077699-S, 2025 WL 2706267, at *6 (Conn. Super. Ct. Sept. 16, 2025) (applying the Restatement (Second) of Torts § 402A to require a complaint to plead facts supporting the inference that seller is "engaged in the activity of selling the defective product as a part of his business" in order to be held liable under the CPLA). Thus, even considering Defendants' affidavit, Defendants have failed to demonstrate by clear and

convincing evidence that Bajraktari has no possibility of asserting a claim against Brautigam in state court.[4]

Accordingly, because Defendants have failed to meet the "heavy burden" to prove by clear and convincing evidence that Bajraktari cannot recover from Brautigam, Brautigam's Connecticut citizenship cannot be disregarded, which means this court lacks diversity jurisdiction over the case. 28 U.S.C. § 1332(a).[5]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand, ECF No. 14, is GRANTED. Defendants' Motion to Dismiss, ECF No. 32, is found as moot. The Clerk is respectfully directed to remand this case to Connecticut Superior Court, Judicial District of Stamford/Norwalk at Stamford, No. FST-CV25-6074974-S.

**SO ORDERED.**

New Haven, Connecticut
September 30, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

[4] Bajraktari asserts that determining whether someone is a "product seller" is "highly fact intensive" and the use of eBay and Facebook Marketplace have led to "revolutionary change in the private marketplace." Pl.'s Mem. 7. In addition, he asserts that even if Brautigam's online sale activities do not make him a "product seller" based on existing law, there should be an extension of existing law by Connecticut courts. Pl.'s Reply 4.

[5] Where, as here, a district court remands an action to state court because the removal was improper, the district court may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The standard for awarding such fees hinges on the "reasonableness" of removal. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005) ("Absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal."). Bajraktari has not requested fees, and in any case, I am not persuaded that it was objectively unreasonable for Defendants to argue that Brautigam was improperly joined in this action. I therefore decline to award fees.